**Nos. 22-11014, 22-11734**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

Tanethia Holden,

Plaintiff-Appellant,

*v.*

Holiday Inn Club Vacations Inc.,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Middle District of Florida

Hon. Carlos E. Mendoza

Case No. 6:19-cv-2373

---

Mark Mayer,

Plaintiff-Appellant,

*v.*

Holiday Inn Club Vacations Inc.,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Middle District of Florida

Hon. Gregory A. Presnell

Case No. 6:20-cv-2283

---

**Brief of Amici Curiae
Consumer Financial Protection Bureau and
Federal Trade Commission in Support of
Plaintiffs-Appellants and Reversal**

---

Anisha S. Dasgupta
*General Counsel*
Joel Marcus
*Deputy General Counsel*
Imad D. Abyad
*Attorney*
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-3579 (Abyad)
iabyad@ftc.gov

Seth Frotman
*General Counsel*
Steven Y. Bressler
*Deputy General Counsel*
Kristin Bateman
*Acting Assistant General Counsel*
Justin M. Sandberg
*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 450-8786 (Sandberg)
Justin.Sandberg@cfpb.gov

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 26.1, counsel for *amici curiae* the Consumer Financial Protection Bureau (CFPB) and the Federal Trade Commission (FTC) certify that the following additional persons and entities have an interest in the outcome of these appeals:

Abyad, Imad D., FTC

Bateman, Kristin, CFPB

Bedoya, Alvaro M., FTC

Bloom, Karen S., CFPB

Bressler, Steven Y., CFPB

Consumer Financial Protection Bureau

Dahdouh, Thomas N., FTC

Dasgupta, Anisha, FTC

Delaney, Elizabeth A., FTC (former)

Estrada, Danielle, FTC

Frant, Nina, FTC

Frotman, Seth, CFPB

Henderson, Juliana Gruenwald, FTC

Hussain, Laura, CFPB (former)

Khan, Lina M., FTC

Kopec, Janice, FTC

Koulousias, Amanda, FTC

Laroia, Gaurav, FTC

Marcus-Kurn, Joel, FTC

Moriarty, Kevin, FTC

Phillips, Noah, FTC (former)

Richardson, Rashida, FTC

Rieke, Aaron, FTC

Sandberg, Justin M., CFPB

Schoshinski, Robert, FTC

Slaughter, Rebecca Kelly, FTC

Spector, Robin, FTC

White, Katherine, FTC

Wilson, Christine S., FTC

Zhao, Daniel, FTC

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
   CORPORATED DISCLOSURE STATEMENT .................................. C-1

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ....................................................... ii

INTEREST OF AMICI CURIAE .................................................. 1

STATEMENT ..................................................................... 3

   A. The Fair Credit Reporting Act ..................................... 3

   B. Factual and Procedural Background ............................... 7

      1. Mark Mayer v. HICV ........................................... 7

      2. Tanethia Holden v. HICV ...................................... 10

SUMMARY OF ARGUMENT .................................................... 12

ARGUMENT ..................................................................... 13

   Furnishers Are Required to Reasonably Investigate
   Disputes, Regardless of Whether the Disputed Inaccuracy
   Can Be Characterized as Legal ....................................... 13

   1. The FCRA Requires a Reasonable Investigation Under
      the Circumstances ................................................. 13

   2. Congress Did Not Exclude Disputes that Implicate
      Legal Questions .................................................... 16

   3. An Atextual Exception for Legal Inaccuracies Will
      Create a Loophole that Could Swallow the Reasonable
      Investigation Rule ................................................. 23

CONCLUSION ................................................................... 26

**Cases**                                                                                   **Page(s)**

*Alston v. Wells Fargo Bank, N.A.,*
   No. 8:12-cv-03671-AW, 2013 WL 990416 (D. Md. Mar. 12, 2013)...........15

*Batterman v. BR Carroll Glenridge, LLC,*
   829 F. App'x 478 (11th Cir. 2020) ........................................................9, 12

*Carvalho v. Equifax Info. Servs. L.L.C.,*
   629 F.3d 876 (9th Cir. 2010) ...................................................................19

*Chiang v. Verizon New Eng. Inc.,*
   595 F.3d 26 (1st Cir. 2010) ...........................................................9, 11, 21

*Chuluunbat v. Experian Info. Sols., Inc.,*
   4 F.4th 562 (7th Cir. 2021) .................................................................... 23

*Cornock v. Trans Union L.L.C.,*
   638 F. Supp. 2d 158 (D.N.H. 2009) ................................................. 23, 24

*Dennis v. BEH-1, LLC,*
   520 F.3d 1066 (9th Cir. 2008) ............................................................... 25

*Doss v. Great Lakes Educ. Loan Servs., Inc.,*
   No. 3:20-cv-45, 2021 WL 1206800 (E.D. Va. Mar. 30, 2021) .................15

*Gorman v. Wolpoff & Abramson, LLP,*
   584 F.3d 1147 (9th Cir. 2009)....................................................4, 14, 15, 21

*Gross v. CitiMortgage, Inc.,*
   33 F.4th 1246 (9th Cir. 2022)................................................17, 18, 20, 22

*Hinkle v. Midland Credit Mgmt., Inc.,*
   827 F.3d 1295 (11th Cir. 2016)........................................................14, 15, 16

*Holden v. Holiday Inn Club Vacations Inc.,*
   No. 6:19-cv-2373-CEM-EJK, 2022 WL 993572 (M.D. Fla.
   Feb. 28, 2022)....................................................................................10, 11, 12

*Hopkins v. I.C. Sys.,*
   No. 18-cv-2063, 2020 WL 2557134 (E.D. Pa. May 5, 2020) .................. 25

*Humphrey v. Trans Union LLC*,
   759 F. App'x 484 (7th Cir. 2019) ............................................................21

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*,
   770 F. App'x 452 (11th Cir. 2019) ........................................ 9, 11

*Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*,
   162 F.3d 1290 (11th Cir. 1998)................................................17

*Johnson v. MBNA Am. Bank, N.A.*,
   357 F.3d 426 (4th Cir. 2004)..................................................15

*Kemp v. United States*,
   142 S. Ct. 1856 (2022)............................................................16

*Losch v. Nationstar Mortgage LLC*,
   995 F.3d 937 (11th Cir. 2021) ........................................... *passim*

*Markosyan v. Hunter Warfield, Inc.*,
   No. 17-cv-5400, 2018 WL 2718089 (C.D. Cal. May 11, 2018)................. 20

*Mayer v. Holiday Inn Club Vacations Inc.*,
   No. 6:20-cv-2283-GAP-EJK (M.D. Fla. April 21, 2022)................. *passim*

*Milgram v. JPMorgan Chase Bank, N.A.*,
   No. 22-10250 (11th Cir. *appeal docketed* Jan. 19, 2022)......................... 18

*Nelson v. Ocwen Loan Servicing, LLC*,
   No. 3:14-cv-00419-HZ, 2014 WL 2866841 (D. Or. June 23, 2014)......... 25

*Sessa v. Linear Motors, LLC*,
   576 F. Supp. 3d 1 (S.D.N.Y. 2021) ........................................... 24

*Solus v. Regions Bank*,
   No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062 (N.D. Ga. July 17, 2020)................................................................19

*Typpi v. PNC Bank, Nat'l Ass'n*,
   No. 13-CV-3930, 2014 WL 296035 (N.D. Ill. Jan. 27, 2014)....................15

**Statutes**

15 U.S.C. § 45(a) ............................................................................1

15 U.S.C. § 1681 .......................................................................1

15 U.S.C. § 1681a(d) .......................................................... 4

15 U.S.C. § 1681g(a) .......................................................... 4

15 U.S.C. § 1681i ......................................................... 19, 20

15 U.S.C. § 1681i(a) ..........................................................5, 14

15 U.S.C. § 1681i(a)(1)(A) ..............................................6, 16

15 U.S.C. § 1681i(a)(2) ...............................................5, 6, 16

15 U.S.C. § 1681i(a)(5)(A) ..............................................6, 16

15 U.S.C. § 1681i(a)(6) .......................................................... 6

15 U.S.C. § 1681i(b)-(c) ...................................................... 6

15 U.S.C. § 1681n .................................................................. 6

15 U.S.C. § 1681o .................................................................. 6

15 U.S.C. § 1681s(a) .........................................................1, 2

15 U.S.C. § 1681s(a)-(c) .....................................................1

15 U.S.C. § 1681s(e) .............................................................1

15 U.S.C. § 1681s-2(a)(8) .............................................. 2, 5

15 U.S.C. § 1681s-2(b) .................................................. *passim*

15 U.S.C. § 1681s-2(b)(1) ............................................ *passim*

15 U.S.C. § 1681s-2(b)(1)(A) .......................................2, 13

15 U.S.C. § 1681s-2(b)(1)(A)-(E) .................................. 6

15 U.S.C. § 1681s-2(c)(1) ................................................... 2

**Rules**

Federal Rule of Civil Procedure 60(b)(1) ....................................16

## Regulations

12 C.F.R. § 1022.41(a) ...................................................................... 22

12 C.F.R. § 1022.42(a) ...................................................................... 22

12 C.F.R. § 1022.43(a) ...................................................................... 17

## Other Authorities

Brief of Amici Curiae, *Sessa v. Linear Motors, LLC*,
   No. 22-87 (2d Cir. May 5, 2022) ............................................ 20

Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer
   Reporting Complaints (Jan. 2022),
   *https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-
   e_report_2022-01.pdf* ..................................................... 3, 6, 7

Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S.
   Credit Reporting System (2012), https://files.consumerfinance.gov
   /f/201212_cfpb_credit-reporting-white-paper.pdf............................. 3, 4

Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting
   Act: An FTC Staff Report with Summary of Interpretations (2011),
   https://www.ftc.gov/sites/default/files/documents/reports/40-years-
   experience-fair-credit-reporting-act-ftc-staff-report-summary-
   interpretations/110720fcrareport.pdf....................................... 14

Holiday Inn Club Vacations, Our Team and Our Values,
   https://hicv.com/our-team ...................................................... 7

Holiday Inn Club Vacations, Our Purpose, https://hicv.com ...................... 7

S. Rep. No. 91-517 (1969) .................................................................. 4

# INTEREST OF AMICI CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 *et seq*., requires consumer reporting agencies (CRAs)—like Experian Information Solutions, Inc. (Experian), TransUnion, and Equifax—and entities that furnish information to CRAs (furnishers)—often, but not always, creditors—to follow various requirements when they compile and disseminate personal information about individuals. The Consumer Financial Protection Bureau (CFPB or Bureau) has exclusive rule-writing authority for most provisions of the FCRA. 15 U.S.C. § 1681s(e). The Bureau interprets and, along with various other federal and state regulators, enforces the Act's requirements. *Id.* § 1681s(a)–(c).

The Federal Trade Commission (FTC or Commission) has been charged by Congress with the mission to protect consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA.  The FTC enforces the FCRA through Section 5 of the FTC Act. Congress deemed a violation of the FCRA to "constitute an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the [FTC Act]." 15 U.S.C. § 1681s(a). And the

FCRA grants the Commission "such procedural, investigative, and enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.*

The FCRA requires a furnisher who is notified by a CRA of a dispute about information it furnished to the CRA (i.e., an indirect dispute)[1] to "conduct an investigation with respect to the disputed information." *Id.* § 1681s-2(b)(1)(A). This case presents a question about the scope of a furnisher's duty to investigate an indirect dispute.

The district court decisions at issue unduly narrow the scope of a furnisher's obligations by holding that furnishers need not investigate indirect disputes involving "legal" inaccuracies. These decisions run counter to the purpose of the FCRA to require a reasonable investigation of consumer disputes and would limit consumers' ability to obtain correction of potentially harmful inaccuracies on their consumer reports. This outcome could reduce the incentive of furnishers to resolve "legal" disputes, and, in turn, could increase the volume of consumer complaints about

---

[1] An "indirect dispute" is one where the consumer files a dispute with the CRA, and the CRA, in turn, notifies the furnisher of it. In contrast, a "direct dispute," addressed by a different provision of the FCRA, 15 U.S.C. § 1681s-2(a)(8), is one that the consumer files directly with the furnisher. The FCRA does not provide a private right of action to consumers for violations of furnishers' obligation to investigate direct disputes. *Id.* § 1681s-2(c)(1).

credit reporting issues[2] that the Bureau receives and devotes resources to address. It could also limit the ability of the Bureau and the FTC to exercise their authorities to protect consumers. The Bureau and the FTC, therefore, have a substantial interest in these issues.

## STATEMENT

### A.  The Fair Credit Reporting Act

1. Information contained in consumer reports has critical effects on Americans' daily lives. Consumer reports are used to evaluate consumers' eligibility for loans and determine the interest rates they pay, ascertain their eligibility for insurance and set the premiums they pay, and assess their eligibility for rental housing and for checking accounts. Prospective employers also commonly use consumer reports in their hiring decisions. *See generally* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (2012),

---

[2] From January to September 2021, the Bureau received over 500,000 consumer complaints related to credit or consumer reporting. *See* Consumer Fin. Prot. Bureau, *Annual Report of Credit and Consumer Reporting Complaints* (Jan. 2022), at 21, https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2022-01.pdf.

https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.[3]

Given the importance of this information, Congress enacted the FCRA to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

2. Since its enactment, the FCRA has governed the practices of CRAs that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers, landlords, and other entities that make eligibility decisions affecting consumers. To further ensure that consumer reports are accurate, in 1996, Congress amended the FCRA to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). These duties include requiring furnishers to investigate when consumers dispute information that the furnisher has given to a CRA. Under the Act, furnishers have an obligation to investigate potential inaccuracies in two circumstances:

---

[3] The FCRA generally uses the term "consumer report," *see e.g.*, 15 U.S.C. § 1681a(d) (defining "consumer report"), rather than the more common term "credit report." Additionally, when consumers request their own information, the FCRA refers to that as a "disclosure" of information in the consumer's "file." *See id.* § 1681g(a).

(i) when a consumer submits an "indirect" dispute to a CRA, which must

forward the dispute to the furnisher under 15 U.S.C. § 1681i(a); and (ii)

when a consumer submits a dispute directly to the furnisher, *see id.*

§ 1681s-2(a)(8) and (b).

The Act requires a furnisher, after it receives notice of an "indirect"

dispute from a CRA pursuant to § 1681i(a)(2), to:

(A) [C]onduct an investigation with respect to the disputed information;

(B) [R]eview all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) [R]eport the results of the investigation to the consumer reporting agency;

(D) [I]f the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) [I]f an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under [§ 1681s-2(b)(1)], for purposes of reporting to a consumer reporting agency only, as appropriate, based on the result of the reinvestigation promptly –

    (i) [M]odify that item of information;

    (ii) [D]elete that item of information; or

    (iii) [P]ermanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

These responsibilities are part of the FCRA's overall framework for

ensuring accuracy in credit reports. As is relevant here, when a consumer

notifies a CRA that he or she disputes "the completeness or accuracy of any

item . . . contained in a consumer's file," the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id*. § 1681i(a)(1)(A). The CRA must also provide notice to the furnisher, *id*. § 1681i(a)(2), after which the furnisher is required to engage in the activities listed above. *Id*. § 1681s-2(b)(1)(A)-(E).[4] A consumer may sue a furnisher for willful or negligent noncompliance with its obligation to perform an investigation under § 1681s-2(b). *Id*. §§ 1681n, 1681o.

3. Despite Congress's repeated efforts to promote accuracy, errors persist in consumer reports. Between January and September 2021, the Bureau received more than 500,000 complaints about credit or consumer reporting, and the most common issue consumers identified was incorrect information on a credit report. *See* Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer Reporting Complaints (Jan. 2022), at 21,

---

[4] Within 30 days of receiving notice of the dispute, the CRA must record the status of the disputed information or modify or delete the disputed information, as appropriate, and promptly notify the furnisher that the information has been modified or deleted. 15 U.S.C. § 1681i(a)(1)(A), (a)(5)(A). After completing a reinvestigation, the CRA must notify the consumer of the results within five business days. *Id*. § 1681i(a)(6). If the CRA reinvestigation does not resolve the dispute, the consumer has the right to add a brief statement about the dispute that will appear or be summarized in all subsequent consumer reports from the CRA that contain the information. *Id*. § 1681i(b)-(c).

30, https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2022-01.pdf.

## B. Factual and Procedural Background

### 1. Mark Mayer v. HICV

Plaintiff-Appellant Mark Mayer entered into a timeshare agreement with Defendant-Appellee Holiday Inn Club Vacations Incorporated (HICV)[5] in 2014 for a property in Cape Canaveral, Florida.[6] Mr. Mayer made monthly payments for approximately three years, but ceased making payments in 2017. In 2019, Mr. Mayer mailed HICV letters that disputed the validity of, and purported to rescind, the agreement, while permitting HICV to retain all prior payments as liquidated damages.

In August 2019, Mr. Mayer obtained a copy of his credit report from Experian. The report stated that he had an open account with HICV with a past-due balance. Mr. Mayer submitted letters to Experian in January,

---

[5] HICV is a for-profit "resort, real estate and travel company." *See* Holiday Inn Club Vacations, Our Purpose, hicv.com. In 2017, HICV was named one of the fastest growing private companies in Central Florida by the Orlando Business Journal. *See* Holiday Inn Club Vacations, Our Team and Our Values, https://hicv.com/our-team.

[6] Unless otherwise noted, the facts in this section are derived from the description in the district court's opinion. *See Mayer v. Holiday Inn Club Vacations Inc.*, No. 6:20-cv-2283-GAP-EJK (M.D. Fla. April 21, 2022) ("Mayer Op.").

March, and April 2020, disputing the credit reporting. The letters stated that Mr. Mayer had terminated his agreement with HICV and that he owed no balance. After Experian communicated each dispute to HICV, HICV certified that the information for Mr. Mayer's account was accurate, and Experian communicated this response to Mr. Mayer.

Mr. Mayer filed this suit in December 2020, alleging that Defendant violated 15 U.S.C. § 1681s-2(b) when it verified the accuracy of his credit report without conducting reasonable investigations following receipt of his indirect disputes. HICV moved for summary judgment in October 2021, alleging that Mr. Mayer's claim—that he was not contractually obligated to make the payments to HICV that are reported on his credit report as being due—"is inherently a legal dispute and is not actionable under the FCRA." Mayer Op. at 5. HICV also argued that the reporting was accurate because the liquidation provision in the time-share agreement did not excuse Mr. Mayer's obligation to continue paying.

The district court granted HICV's motion for summary judgment. Mayer Op. at 8. The court first relied on an unpublished Eleventh Circuit opinion and an out-of-circuit decision to find that a plaintiff "must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)." *See* Mayer Op. at 5

(citing *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019), which quotes *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).

The court then found that the parties' dispute in this case—which it characterized as being about whether a liquidation clause in the timeshare contract excused Mr. Mayer's payment obligations and therefore rendered inaccurate the credit reporting about an unpaid balance—was a "legal" contractual dispute, and "not a factual issue that would support a FCRA claim." *See* Mayer Op. at 5. To reach its conclusion, the district court relied on an unpublished decision concerning a different provision of the FCRA, *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020), which held that a plaintiff failed to state an FCRA claim against a CRA because the plaintiff's allegations about the applicability of a liquidated damages provision involved a legal dispute, not a factual inaccuracy.[7] *See* Mayer Op. at 5-6.

_____

[7] The district court also considered whether the Eleventh Circuit's recent decision in *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021)—which held that where a court has clearly resolved a legal dispute, reporting information inconsistent with the resolution can constitute a "factual inaccuracy" that would support an FCRA claim against a CRA—"change[d] the balance here." The district court found that cases construing contract provisions analogous to the liquidated damages provision of the timeshare agreement at issue here had reached "conflicting

9

The court did not reach the question of whether HICV's investigations of Mr. Mayer's indirect disputes were reasonable.

Plaintiff noticed this appeal on May 20, 2022.

### 2. Tanethia Holden v. HICV

Plaintiff-Appellant Tanethia Holden entered into a timeshare agreement with Defendant-Appellee HICV in 2016.[8] Ms. Holden made a down payment and the first three installment payments, but then did not make any additional payments. In 2017, Ms. Holden mailed letters to HICV that disputed the validity of, and attempted to cancel, the agreement. The timeshare deed was recorded in June 2017, and HICV reported to Experian that Ms. Holden was delinquent on her payments.

Ms. Holden submitted letters to Experian in June, September, and November 2018, disputing the credit reporting. After Experian communicated the disputes to HICV, HICV determined there was no inaccuracy in the reporting.

---

outcomes," but acknowledged that, based on *Losch*, Mr. Mayer "might be able to establish a [FCRA] claim against HICV if enough courts had ruled against HICV's interpretation of the contractual provision at issue." Op. at 6.

[8] Unless otherwise noted, the facts in this section are derived from the description in the district court's opinion. *See Holden v. Holiday Inn Club Vacations Inc.*, No. 6:19-cv-2373-CEM-EJK, 2022 WL 993572 (M.D. Fla. Feb. 28, 2022).

Ms. Holden filed this suit in December 2019, alleging (in the only claim remaining) that Defendant violated 15 U.S.C. § 1681s-2(b) when it verified the accuracy of her credit report without conducting reasonable investigations following receipt of her indirect disputes about credit reporting inaccuracies. HICV moved for summary judgment as to this claim, and Ms. Holden moved for partial summary judgment as to whether HICV's reporting was inaccurate.

The district court granted HICV's motion for summary judgment. *Holden*, 2022 WL 993572, at *1. Its reasoning closely tracked that of the district court in *Mayer*. Relying on the same cases as *Mayer*, the court first held that a plaintiff "'must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).'" *See Holden*, 2022 WL 993572, at *3 (quoting *Hunt*, 770 F. App'x at 458, which quotes *Chiang*, 595 F.3d at 38). The court also held, again relying on the same unpublished decision as *Mayer*, that the parties' dispute in this case—which it characterized as a contract dispute about whether the relevant contract had been properly rescinded—was a "legal" contractual dispute, not a factual dispute that would support an FCRA

claim.[9] *See Holden*, 2022 WL 993572, at *3 (citing *Batterman*, 829 F. App'x at 481).

The court did not reach the question of whether HICV's investigations of Ms. Holden's indirect disputes were reasonable.

Ms. Holden noticed this appeal on March 30, 2022. Her appeal was consolidated with Mr. Mayer's on July 15, 2022.

## SUMMARY OF ARGUMENT

The Fair Credit Reporting Act requires furnishers of information to consumer reporting agencies to reasonably investigate disputes regarding the completeness or accuracy of the information furnished. Although the statute does not distinguish between legal and factual disputes, the district court decisions conclude that a furnisher's failure to investigate a dispute alleging that the information is inaccurate for a legal reason (as opposed to

---

[9] Like the court in *Mayer*, the court in *Holden* also considered whether *Losch*, 995 F.3d 937 changed the conclusion. The district court found that cases construing similar contract provisions had "interpreted the contractual provisions in a manner consistent with Plaintiff's interpretation," but stated that "there has not [here] been the kind of final resolution referenced in *Losch*" because one of those cases was being appealed and Defendant provided at least one other court order that sided with its contractual interpretation. *Holden*, 2022 WL 993572, at *3. Moreover, the court noted that even if the cases cited by Plaintiff resolved the legal dispute in this case, "they did not exist at the time that Defendant was investigating Plaintiff's debt, and therefore, at the time, this issue was unquestionably a legal dispute and not a factual inaccuracy." *Id.*

a factual one) cannot form the basis for a claim that a furnisher has violated § 1681s-2(b). These opinions are not supported by the statute, risk exposing consumers to more inaccurate credit reporting, conflict with the decision of another circuit, and undercut the remedial purpose of the FCRA. Moreover, separating "factual" disputes from "legal" ones is difficult to accomplish in practice and would allow furnishers to evade their statutory obligations by characterizing nearly any dispute as a "legal" one. This Court should reverse the district courts' judgments and clarify that furnishers are required to, and can be held liable for failing to, conduct reasonable investigations of both legal and factual questions posed in consumer disputes.

## ARGUMENT

### Furnishers Are Required to Reasonably Investigate Disputes, Regardless of Whether the Disputed Inaccuracy Can Be Characterized as Legal

#### 1. The FCRA Requires a Reasonable Investigation Under the Circumstances

Under the FCRA, a furnisher who receives notice of a dispute about the completeness or accuracy of information it provided to a CRA is required to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). While the FCRA does not explicitly specify the nature and extent of the "investigation" a furnisher must conduct under 1681s-2(b), this Court has determined that

"'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)."[10] *Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1301-02 (11th Cir. 2016). Requiring a reasonable investigation, rather than a "cursory or sloppy review of the dispute," comports with the FCRA's goal to "protect consumers from the transmission of inaccurate information about them.'" *Gorman*, 584 F.3d at 1155, 1157.

What constitutes a "reasonable" investigation is case specific, and the investigation must be "reasonable under the circumstances. It may be either simple or complex, depending on the nature of the dispute." Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations (2011), at 96, https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf. A merely "superficial" inquiry will not suffice; a reasonable investigation "requires some degree of careful

---

[10] The Court reached this conclusion because the FCRA's structure "suggests that the duty of a furnisher under § 1681s-2(b) is a component of the larger reinvestigation duty imposed by § 1681i(a) on CRAs themselves." *Hinkle,* 827 F.3d at 1301. Since Section 1681i(a) imposes on CRAs "a duty . . . to make *reasonable* efforts to investigate and correct inaccurate or incomplete information brought to [their] attention by [a] consumer," *id.* at 1302 (emphasis added), furnisher investigations should likewise be evaluated under a reasonableness standard. *Id.*

inquiry." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004); *Hinkle*, 827 F.3d at 1303. It must contain a "qualitative component," *Johnson*, 357 F.3d at 430, and courts reject furnishers' assertions that they satsify their obligation to investigate simply by going through the motions of conducting an investigation. *See, e.g.*, *Alston v. Wells Fargo Bank, N.A.*, No. 8:12-cv-03671-AW, 2013 WL 990416, at *5 (D. Md. Mar. 12, 2013).

While an investigation "is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer," *Gorman*, 584 F.3d at 1161, a furnisher's continuing to erroneously report information after a consumer files a dispute about the accuracy of that information may be evidence of the unreasonableness of a furnisher's investigation in certain circumstances. *See, e.g.*, *Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20-cv-45, 2021 WL 1206800, at *9 (E.D. Va. Mar. 30, 2021).[11] When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle*, 827 F.3d at 1303. In other words, the reasonableness of the investigation

---

[11] *See also Typpi v. PNC Bank, Nat'l Ass'n*, No. 13-CV-3930, 2014 WL 296035, at *9 (N.D. Ill. Jan. 27, 2014).

can be evaluated by how thoroughly the furnisher investigated the dispute (e.g., how well its conclusion is supported by the information it considered or reasonably could have considered).

### 2. Congress Did Not Exclude Disputes that Implicate Legal Questions

The FCRA specifically describes the types of indirect disputes that furnishers need to investigate—those that dispute "the completeness or accuracy of any item of information contained in a consumer's file."[12] 15 U.S.C. §§ 1681i(a)(1)(A), (a)(2), 1681s-2(b)(1). Nothing in the term "accuracy" suggests that Congress intended to exclude information that is inaccurate on account of legal issues. *See generally Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022) (holding that the word "mistake" in Federal Rule of Civil Procedure 60(b)(1) encompasses both mistakes of fact and of law, because had the drafters "intended a narrower meaning, they 'easily could have drafted language to that effect'. . . The difference between 'mistake of fact' and 'mistake of law' was well known at the time. . . . Yet they chose to include 'mistake' unqualified."). To the contrary, the accuracy and completeness of information in consumer files often turns on legal

---

[12] Notably, under the FCRA, a CRA is required to delete an item if it cannot be verified. 15 U.S.C. § 1681i(a)(5)(A); *Hinkle,* 827 F.3d at 1304.

issues, such as whether a debt is valid and who is obligated to pay it.[13] Many inaccuracies in consumer reports could be characterized as legal, which would create an exception that would swallow the rule. Consumer reports generally include information about an individual's debt obligations, and debts are generally creatures of contract. Thus, many inaccurate representations pertaining to an individual's debt obligations arguably could be characterized as legal inaccuracies, given that determining the truth or falsity of the representation could require the reading of a contract. *Cf. Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1329 (11th Cir. 1998) (explaining that "contract interpretation is a question of law").

This Court has an opportunity to join its sister circuit in holding that the FCRA does not categorically exempt disputes raising legal issues from the investigations that the FCRA requires of furnishers under § 1681s-2(b)(1), *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022), and, in

---

[13] Although the Bureau has not issued regulations addressing indirect furnisher disputes, it has issued regulations implementing the requirement for furnishers to conduct investigations of direct disputes concerning accuracy, and the Court may look to those regulations for guidance. They specifically require that "a furnisher must conduct a reasonable investigation of a direct dispute if it relates to [] [t]he consumer's liability for a credit account or other debt with the furnisher," 12 C.F.R. § 1022.43(a), (a)(1), which clearly involves a legal question.

the process, provide clarity to district courts on an important question of consumer finance law.[14] The district court below justified its holding in *Mayer* by noting that none of the cases cited to it "actually permit a FCRA claim based on a legal dispute to go forward against a furnisher." Mayer Op. at 5 n.2. But in *Gross*, issued approximately one month after the district court's decision in *Mayer*, the Ninth Circuit held that the "FCRA does not categorically exempt legal issues from the investigations that furnishers must conduct. The distinction between 'legal' and 'factual' issues is ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a 'legal' one." *Gross*, 33 F.4th at 1253 (quotations omitted). As the Ninth Circuit has recognized, the "FCRA will sometimes require furnishers [as part of their investigatory obligations] to investigate, and even to highlight or resolve, questions of legal significance." *Id*. This Court should join its sister circuit in holding that the statute does not exclude from the investigation requirement disputes that could be characterized as legal.

---

[14] In *Milgram v. JPMorgan Chase Bank, N.A.*, No. 22-10250 (11th Cir. *appeal docketed* Jan. 19, 2022), this Court is also reviewing a district court decision that could be read to say that furnishers' obligations to conduct reasonable investigations of consumer disputes do not extend to assessing the merits of legal questions. The Bureau filed an amicus brief in that matter in April 2022.

Prior to the Ninth Circuit's decision, some courts had drawn a distinction between factual and legal inaccuracies in the context of a *different* FCRA provision that does not apply to furnishers. *See, e.g.*, *Solus v. Regions Bank*, No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020) ("[R]easonable reinvestigation does not require CRAs to resolve legal disputes about the validity of the underlying debts they report."); *Carvalho v. Equifax Info. Servs. L.L.C.,* 629 F.3d 876, 892 (9th Cir. 2010) ("A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits.").[15] That provision, 15 U.S.C. § 1681i, requires *CRAs* to conduct "a reasonable reinvestigation" of disputes received from consumers regarding the accuracy or completeness of information in the consumer's file.

But even if it were proper to interpret § 1681i as excusing CRAs from investigating legal disputes (it is not, but the Court need not address that distinct question here), it would not follow that furnishers' investigatory obligations under a different provision, § 1681s-2(b)(1), are similarly

---

[15] Although this Court has cited *Carvalho* approvingly with respect to a CRA's obligations, *see Losch*, 995 F.3d at 946-47, ultimately this Court concluded in *Losch* that a CRA that "did nothing" in response to a consumer's dispute could be found to have violated the FCRA, even though it is not required to *resolve* legal disputes. *See discussion infra.*

limited. The Ninth Circuit recognized in *Gross* that decisions about *CRAs'* obligations under § 1681i should not control the scope of *furnishers'* investigatory obligations under § 1681s-2(b)(1). *See Gross*, 33 F.4th at 1253; *accord Markosyan v. Hunter Warfield, Inc.*, No. 17-cv-5400, 2018 WL 2718089, at *8 (C.D. Cal. May 11, 2018) ("[T]he rationale for excluding legal validity from the scope of a CRA's investigative duty does not extend to a furnisher."). The institutional competencies of CRAs and furnishers differ: CRAs "lack any direct relationships with the consumer . . ." *Gross*, 33 F.4th at 1253 (internal quotations, alteration, and citation omitted). Furnishers, by contrast, generally have superior access to the relevant information regarding disputed debts. *See id.* Thus, furnishers' investigatory obligations "will often be more extensive."[16] *Id.*

Indeed, even the courts that have distinguished between factual and legal investigations by CRAs have recognized the institutional traits that differentiate CRAs from furnishers, i.e., that CRAs, as third parties to the

---

[16] Even in the context of CRA reinvestigations, there is no support in the text of the FCRA for distinguishing between "factual" and "legal" inaccuracies, and drawing such a distinction risks exposing consumers to more inaccurate credit reporting and undercutting the remedial purpose of the FCRA. *See* Brief for the Consumer Financial Protection Bureau and the Federal Trade Commission as Amici Curiae Supporting Plaintiff-Appellant at 9, *Sessa v. Linear Motors, LLC*, No. 22-87 (2d Cir. May 5, 2022).

debt-generating transactions, are not as well positioned as furnishers to investigate legal disputes arising from those transactions. *See, e.g., Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019) (concluding that furnisher "was in a better position than the CRAs to make this determination" regarding the validity of a loan); *see also Gorman*, 584 F.3d at 1156-57 (noting that CRAs "lack[] any direct relationship with the consumer"). This Court similarly discussed the role and competency of CRAs in *Losch*, stating that a CRA's "'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher," and therefore concluding that CRAs are not required to "*resolve* legal disputes about the validity of the underlying debts they report." 995 F.3d at 946-47 (emphasis added). Even then, however, this Court held that CRAs are not excused from conducting at least some independent investigation of disputed information, including where the information could be described as involving a legal question. *Id.*

The cases that import a factual-legal distinction from CRA re-investigations into the context of furnishers' investigative responsibilities ignore that furnishers can, and do, routinely assess the legal enforceability of debt. The district court in *Mayer*, for example, cited *Chiang v. Verizon New England*, 595 F.3d at 38, 48, which imported a factual-legal

distinction from a case about CRAs into the context of furnisher investigations, and noted (without explanation) that "like CRAs, furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." Mayer Op. at 6 n.3 (cleaned up). But furnishers *are* qualified and obligated to assess issues such as whether debts are actually due and/or are collectible.[17] Indeed, furnishers routinely assess whether debts are due and collectible when (i) deciding whether and how much to collect on obligations and (ii) complying with their duties to accurately report credit information. A stark distinction between legal and factual disputes is therefore particularly inappropriate in the context of furnisher investigations.

---

[17] For example, for purposes of various furnisher obligations, including the requirement that furnishers conduct investigations of direct disputes, accuracy is defined in the FCRA's implementing regulations to include that the information "correctly [r]eflects . . . liability for the account." 12 C.F.R. § 1022.41(a), (a)(1). To fulfill this obligation, furnishers must "establish and implement reasonable written policies" that are "appropriate to the nature, size, complexity, and scope of each furnisher's activities." 12 C.F.R. § 1022.42(a); *see also, e.g.*, *Gross*, 33 F.4th at 1253 (discussing "several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff"). As noted above, the Court may look to those regulations for guidance with respect to indirect disputes. *See supra* n.13.

### 3. An Atextual Exception for Legal Inaccuracies Will Create a Loophole that Could Swallow the Reasonable Investigation Rule

This Court should also reject a formal distinction between factual and legal investigations because it will likely prove unworkable in practice. "[C]lassifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Cornock v. Trans Union L.L.C.*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009). The same dispute could be characterized as either factual or legal—or both. For example, the Seventh Circuit recently considered a set of consolidated cases in which plaintiffs claimed that they did not owe certain debts to the creditors listed on their credit reports because the debts had purportedly been assigned to other companies. The district courts offered different reasoning and reached different conclusions in many of the cases: Some courts determined that whether the creditors owned the debts was a question of law; one decided that ownership of a debt was a mixed question of law and fact; and still other courts "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 566 (7th Cir. 2021). Likewise, another court noted that a plaintiff's dispute about a fraudulently opened credit card account "could be called 'factual' in the sense that . . . [plaintiff] did not sign

the credit card application as a matter of fact; but it could also be called 'legal' in the sense that, as [the CRA] suggests, [plaintiff] claimed that he therefore had no liability as a matter of law while [the bank] claimed otherwise based on alleged payments to it out of an account he jointly held." *Cornock*, 638 F. Supp. 2d at 163.

The difficulty in distinguishing legal issues from factual ones could undermine the FCRA's important protections, as evidenced by a decision currently being appealed to the Second Circuit. In *Sessa v. Linear Motors, LLC*, a CRA erroneously reported that a consumer owed a large "balloon payment" at the end of her car lease, when in fact her car lease contained no such payment obligation whatsoever. The figure listed as a "balloon payment" on her credit report was simply a notation of the residual value of the car at lease-end. 576 F. Supp. 3d 1, 5 (S.D.N.Y. 2021) (appeal pending). Despite the reporting being clear error, the district court granted summary judgment to the CRA, finding that the plaintiff consumer's credit report did not contain a "factual inaccuracy" because, it reasoned, the incorrectly reported information implicated "a contractual dispute" (i.e., resolving the dispute required reading the plain terms of the contract). *Id*. at 13-14. But given that debts are generally creatures of contract, and thus almost any dispute about a debt might require a review of the contract terms, this case

shows how easily a loophole for "legal" inaccuracies can be manipulated to swallow the rule.[18]

Given the difficulty in distinguishing "legal" from "factual" disputes, this Court should hold that there is no exemption in the FCRA's reasonable investigation requirement for legal questions. Such an exemption would curtail the reach of the FCRA's investigation requirement in a way that runs counter to the purpose of the provision to require meaningful investigation to ensure accuracy on credit reports. It would also result in an unworkable standard where mixed questions of fact and law are presented, and it would encourage the evasion of statutory obligations by allowing furnishers to characterize disputes as legal.

---

[18] As a result of the difficulty in cleanly distinguishing legal and factual issues, even in the context of CRA reinvestigations, some courts have correctly rejected a formal legal/factual distinction. For example, "the Ninth Circuit has endorsed holding a CRA liable under the FCRA when it 'overlooks or misinterprets' . . . publicly available documents of *legal* significance." *Nelson v. Ocwen Loan Servicing, LLC,* No. 3:14-cv-00419-HZ, 2014 WL 2866841, at *5 (D. Or. June 23, 2014) (emphasis added) (relying on *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-70 (9th Cir. 2008)). And even courts that maintain a factual-legal distinction have found that if a legal issue has already been adjudicated by another court or otherwise resolved, a dispute raising that issue should be considered factual, rather than legal. *See, e.g.*, *Losch,* 995 F.3d at 946-47; *Hopkins v. I.C. Sys.*, No. 18-cv-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 5, 2020).

## CONCLUSION

For the foregoing reasons, the judgments of the district courts should be reversed.

December 16, 2022

Seth Frotman
   *General Counsel*
Steven Y. Bressler
   *Deputy General Counsel*
Kristin Bateman
   *Acting Assistant General Counsel*

/s/ *Justin M. Sandberg*
Justin M. Sandberg
   *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786 (Sandberg)
Justin.Sandberg@cfpb.gov

Anisha S. Dasgupta
   *General Counsel*
Joel Marcus
   *Deputy General Counsel*

/s/ *Imad Abyad*
Imad D. Abyad
   *Attorney*
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-3579 (Abyad)
iabyad@ftc.gov

## Certificate of Compliance

This brief complies with the length limits permitted by Federal Rule of Appellate Procedure 29(a)(5). The brief contains 5,700 words, excluding the portions exempted by Rule 32(f). The brief's typeface and type style comply with Rule 32(a)(5) and (6).

December 16, 2022

/s/ *Justin M. Sandberg*
Justin M. Sandberg
   *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786
Justin.Sandberg@cfpb.gov

**Certificate of Service**

I hereby certify that on December 16, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

December 16, 2022

/s / *Justin M. Sandberg*
Justin M. Sandberg
 *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786
Justin.Sandberg@cfpb.gov